The STATE of Ohio, Appellee,

v.

BAYS, Appellant.

[Cite as *State v. Bays*, 159 Ohio App.3d 469, 2005-Ohio-47.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 2004–CA–30.

Decided Jan. 7, 2005.

William F. Schenck, Greene County Prosecuting Attorney, and Robert K. Hendrix, Assistant Prosecuting Attorney, for appellee.

David H. Bodiker, Ohio Public Defender, and Ruth L. Tkacz, Assistant State Public Defender, for appellant.

FAIN, Presiding Judge.

{¶ 1} Richard R. Bays appeals from the trial court's denial of his postconviction-relief petition to vacate his death sentence, based upon *Atkins v. Virginia* (2002), 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335, and *State v. Lott*, 97 Ohio St.3d 303, 2002-Ohio-6625, 779 N.E.2d 1011. Bays, an indigent capital defendant with significant, documented cognitive deficits, contends that the trial court abused its discretion when it denied his request for funding to obtain the expert assistance he needed to meet his burden of proving that he is mentally retarded and therefore should not be executed, pursuant to *Atkins* and *Lott*. We conclude that the trial court did abuse its discretion when it denied Bays's request for funding for an expert on mental retardation for *Atkins* purposes.

{¶ 2} Accordingly, the order of the trial court denying Bays's petition for postconviction relief is reversed, and this cause is remanded for further proceedings consistent with this opinion.

I

{¶ 3} The relevant facts of this case are set forth in our opinion in *State v. Bays*, Greene App. No. 2003 CA 4, 2003-Ohio-3234, 2003 WL 21419173, at ¶ 2–4, as follows:

{¶ 4} "In December 1995, Bays was found guilty by a three-judge panel in the Greene County Court of Common Pleas of the aggravated murder and aggravated robbery of Charles Weaver, a seventy-six year old acquaintance who had been confined to a wheelchair. Bays had used the stolen money to buy crack cocaine. The evidence against Bays included his confession to the police and his reenactment of the crime, which the trial court refused to suppress. Bays offered evidence in mitigation, including testimony about his low level of mental functioning and longstanding substance abuse, but the evidence was found to be entitled to little weight. The judges imposed a sentence of death for aggravated murder and ten to twenty-five years for aggravated robbery. Bays appealed, and both this court and the Supreme Court of Ohio affirmed his conviction. *State v. Bays* (Jan. 30, 1998), Greene App. No. 95–CA–118 [1998 WL 32595], and *State v. Bays,* 87 Ohio St.3d 15, 1999-Ohio-216 [716 N.E.2d 1126]. The United States Supreme Court denied certiorari. *Bays v. Ohio* (2000), 529 U.S. 1090, 120 S.Ct. 1727, 146 L.Ed.2d 647.

{¶ 5} "In July 1996, Bays filed a petition for postconviction relief pursuant to R.C. 2953.21. The trial court dismissed the petition without a hearing, and Bays appealed. We concluded that Bays' evidentiary documents had warranted a hearing on 'his allegations concerning his trial counsel's ineffectiveness in having failed to present witnesses and other evidence during the defendant's case-in-chief and in having failed to call Bays' wife, Martha, and her son, Scott, as witnesses during the suppression hearing and during the guilt phase of the trial.' We remanded the case to the trial court for an evidentiary hearing. *State v. Bays* (Jan. 30, 1998), Greene App. No. 96–CA–118 [1998 WL 31514].

{¶ 6} "At the evidentiary hearing, Martha Bays testified that police officers had pressured her to convince Bays to confess in exchange for an eight-year sentence. According to Martha Bays, she subsequently told Bays to tell the police what had happened, but she did not tell him about the offer of leniency. Martha Bays' son testified that he had seen Bays using crack cocaine shortly before he confessed to the police. Bays offered some other evidence about the motives of an inmate who had testified against him as well. After the hearing, the trial court concluded

that Bays' evidence had not been credible, and it again denied the petition for postconviction relief."

{¶ 7} Bays appealed from the second denial of his petition for postconviction relief, and we affirmed the decision of the trial court. Id. at ¶ 29. Pursuant to R.C. 2953.21, Bays has again filed a postconviction-relief petition to vacate his death sentence based upon *Atkins v. Virginia* (2002), 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335, and *State v. Lott,* 97 Ohio St.3d 303, 2002-Ohio-6625, 779 N.E.2d 1011. Bays alleges that he is mentally retarded, and therefore, pursuant to *Atkins* and *Lott,* he should not be executed.

{¶ 8} Bays filed a motion for funding necessary to retain a mental-retardation expert. The trial court overruled the motion, finding that "[t]wo experts have previously examined the Defendant, the results of which are available to Defendant and his counsel." Because the trial court denied funds for a mental-retardation expert, Bays then filed a motion for clarification, requesting the trial court to clarify what the evidentiary hearing was to entail, without expert testimony. The trial court responded as follows:

{¶ 9} "The records in this case indicate that not only has Petitioner been examined during the pendency of the case, but that such examination gave every indication of Petitioner being above the threshold established by the courts for mental retardation.

{¶ 10} "Consequently, unless at the scheduled hearing Petitioner presents the requisite preponderance of evidence establishing a mistake of fact or other determinative point in the original IQ determination, or evidence of something which would compel and require a redetermination of the issue, the Petitioner will not have met his burden, since an unsupported bare statement that Petitioner meets the mental retardation condition necessary to vacate a death sentence would be insufficient."

{¶ 11} At the hearing, Bays did not present any evidence and contended that he was unable to present evidence to support his claim without funding for a mental-retardation expert. After reviewing the prior testimony of the two experts during the mitigation phase of Bays's trial and their statements that Bays's I.Q. was above 70, the trial court denied the petition for postconviction relief, finding that "Petitioner has failed to provide even minimal proof in support of his contention of mental retardation below an IQ of 70." From this denial of his postconviction-relief petition to vacate his death sentence, Bays appeals.

## II

{¶ 12} Bays's sole assignment of error is as follows:

{¶ 13} "The trial court erred by denying funds for expert services to an indigent capital defendant who presented prima facie evidence of his mental retardation."

{¶ 14} Bays, an indigent capital defendant with significant, documented cognitive deficits, contends that the trial court abused its discretion in denying his request for funding to obtain the expert assistance he needs to meet his burden of proving that he is mentally retarded, so that, pursuant to *Atkins* and *Lott*, he should not be executed. Bays presents the following issue for review:

{¶ 15} "Does an indigent capital petitioner who has documented cognitive deficits have a constitutional right to the services of an expert to prove a claim of mental retardation under *Atkins v. Virginia*?"

{¶ 16} The Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Supreme Court of the United States has held that the execution of mentally retarded offenders constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Atkins*, 536 U.S. at 321, 122 S.Ct. 2242, 153 L.Ed.2d 335. In *Atkins*, the Supreme Court left to the states " 'the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences.' " Id. at 317, 122 S.Ct. 2242, 153 L.Ed.2d 335, quoting *Ford v. Wainwright* (1986), 477 U.S. 399, 416–417, 106 S.Ct. 2595, 91 L.Ed.2d 335.

{¶ 17} The Supreme Court of Ohio has established substantive standards and procedural guidelines to be used by Ohio courts in determining whether a convicted person facing the death penalty is mentally retarded. *Lott*, 97 Ohio St.3d 303, 2002-Ohio-6625, 779 N.E.2d 1011, at ¶ 11. In *Lott*, the Ohio Supreme Court adopted a three-part test, which had been cited with approval in *Atkins*, 536 U.S. at 308, 122 S.Ct. 2242, 153 L.Ed.2d 335, fn. 3, which defines mental retardation as follows: "(1) significantly subaverage intellectual functioning, (2) significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction, and (3) onset before the age of 18." Id. at ¶ 12. The court went on to state, "Most state statutes prohibiting the execution of the mentally retarded require evidence that the individual has an IQ of 70 or below. While IQ tests are one of the many factors that need to be considered, they alone are not sufficient to make a final determination on this issue. We hold that there is a rebuttable presumption that a defendant is not mentally retarded if his or her IQ is above 70." (Citations omitted.) Id. The Ohio Supreme Court held that the burden of proof, by a preponderance of the evidence, is on the defendant to establish that he is mentally retarded. Id. at ¶ 21.

{¶ 18} The Ohio Supreme Court also stated that whether a defendant is mentally retarded is an issue of fact that is best resolved by the trial court. *Lott,* 97 Ohio St.3d 303, 2002-Ohio-6625, 779 N.E.2d 1011, at ¶ 9. "The defense should have the opportunity to present additional evidence on [the defendant's] mental retardation before a final decision is made." Id. In establishing procedural guidelines, the court stated as follows:

{¶ 19} "[T]he trial court shall conduct its own de novo review of the evidence in determining whether the defendant is mentally retarded. The trial court should rely on professional evaluations of [the defendant's] mental status, and consider expert testimony, appointing experts if necessary, in deciding this matter. The trial court shall make written findings and set forth its rationale for finding the defendant mentally retarded or not mentally retarded. We believe that these matters should be decided by the court and do not represent a jury question." Id. at ¶ 18.

{¶ 20} In this case, the trial court based its decision to deny Bays's petition for postconviction relief upon Bays's failure to present any evidence of an I.Q. below 70 to show that he is mentally retarded. The trial court emphasized that Bays had been examined by two experts, who testified during the mitigation phase of Bays's trial, and that their testimony was that Bays's I.Q. was above 70.

{¶ 21} During the mitigation phase of Bays's trial, Dr. Kathleen Burch, a clinical psychologist, testified that she had performed a neuropsychological evaluation of Bays. She testified that she had determined that Bays was of borderline intellectual functioning, i.e., an I.Q. level between mental retardation and normal functioning, and that this had been consistent throughout his life. Dr. Burch testified that Bays "is not included in that very small group of two percent of the population who is considered actually mentally retarded, but he is at about the five percentile, meaning about 95 percent of the population have better intellectual competence, better skills than he has. So he is functioning very low overall."

{¶ 22} Dr. Newton L.P. Jackson Jr., a forensic psychologist, also testified that he conducted psychological tests on Bays and concluded that Bays was within the borderline range of intellectual functioning in obtaining a verbal I.Q. score of 80, a performance I.Q. score of 69, and an overall I.Q. score of 74. Dr. Jackson testified that according to Bays's school records, these findings were consistent with the intelligence testing that was conducted on Bays when he was 13 years old, in which he obtained a verbal I.Q. of 81, a performance I.Q. of 64, and a full scale I.Q. of 71. Dr. Jackson testified that an I.Q. score between 80 and 90 is considered to be within the adult normal range, an I.Q. score between 70 and 80 is in the borderline range, and an I.Q. score below 70 is in the mental retardation range.

{¶ 23} There is a significant difference between expert testimony offered for mitigation purposes and expert testimony offered for *Atkins* purposes. Although the expert testimony presented at Bays's mitigation hearing regarding his intellectual limitations is relevant to Bays's *Atkins* claim, it was not developed either to prove or to disprove the issue presented by his *Atkins* claim—whether Bays is so impaired that his execution would constitute cruel and unusual punishment. See *State v. Carter*, 157 Ohio App.3d 689, 2004-Ohio-3372, 813 N.E.2d 78, at ¶ 22. The expert testimony offered at Bays's mitigation hearing was not presented or developed to establish Bays's mental retardation status for purposes of *Atkins*, using the test adopted in *Lott*. Nor can Bays fairly have been required to have used the vehicle of his guilt or punishment trials to have developed evidence on the issue of whether he meets the mental retardation test set forth in *Lott*, since his trials, conviction and sentence all predate the *Lott* decision.

{¶ 24} The three-part test set forth in *Atkins*, and adopted by the Ohio Supreme Court in *Lott*, requires that the following three criteria be met to establish mental retardation: "(1) significantly subaverage intellectual functioning, (2) significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction, and (3) onset before the age of 18." *Lott*, 97 Ohio St.3d 303, 2002-Ohio-6625, 779 N.E.2d 1011, at ¶ 12. Bays has the burden of proving, by a preponderance of the evidence, that he is mentally retarded under the three-part test. See id. at ¶ 21. There is a rebuttable presumption that Bays is not mentally retarded if his I.Q. is above 70, but he must be allowed access to the resources that might permit him to rebut this presumption, in view of the fact that he is an indigent defendant with significant, documented cognitive deficits, as shown by his school records and the testimony of Drs. Burch and Jackson.

{¶ 25} We conclude that the trial court abused its discretion when it denied Bays's request for funding for an expert on mental retardation for the purposes of attempting to prove his *Atkins* mental-retardation claim.

{¶ 26} Bays's sole assignment of error is sustained.

### III

{¶ 27} Bays's sole assignment of error having been sustained, the order of the trial court denying Bays's petition for postconviction relief is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

WOLFF and FREDERICK N. YOUNG, JJ., concur.