[Cite as *State v. Jackson*, 2020-Ohio-4015.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO.  1-19-63

    v.

CLEVELAND R. JACKSON,            O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2002 0011

Judgment Affirmed

Date of Decision:  August 10, 2020

APPEARANCES:

    *Dale A. Baich, Kelle A. Andrews, and Charlotte G. Merrill*
        for Appellant

    *Jana E. Emerick* for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Cleveland R. Jackson ("Jackson"), appeals the September 26, 2019 judgment of the Allen County Court of Common Pleas rejecting his petition for post-conviction relief. For the reasons that follow, we affirm.

{¶2} This matter originated with Jackson's 2002 conviction and death sentence for the murder of Leneshia R. Williams ("Williams"). On January 3, 2002, Jackson and his half-brother, Jeronique Cunningham, robbed a group of eight people at gunpoint and then fired their weapons into the group. Three-year-old Jayla Grant ("Grant") and 17-year-old Williams were shot and died as a result of their injuries.

{¶3} On January 10, 2002, the Allen County Grand Jury indicted Jackson on nine counts: Counts One and Two of aggravated murder in violation of R.C. 2903.01(B); Count Three of aggravated robbery in violation of R.C. 2911.01(A)(1); and Counts Four through Nine of attempted aggravated murder in violation of R.C. 2923.02 and R.C. 2903.01(B). (Doc. No. 1). Counts One and Two both contained death-penalty specifications under R.C. 2929.04(A)(5) and R.C. 2929.04(A)(7). (Id.). Counts One through Nine also contained firearm specifications under R.C. 2941.145(A). (Id.).

{¶4} A jury trial commenced on July 16, 2002. (Doc. No. 313). On July 25, 2002, the jury found Jackson guilty on all counts. (Id.). Additionally, the jury found that the State proved all of the specifications, including the death-penalty

specifications, beyond a reasonable doubt. (*Id.*). On July 26, 2002, the trial court filed its judgment entry of conviction. (*Id.*).

{¶5} A mitigation hearing was held on July 29, 2002. (Doc. No. 344). For the purposes of sentencing, the trial court instructed the jury to consider only whether each aggravated murder was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons under R.C. 2929.04(A)(5), thereby removing the aggravating factor under R.C. 2929.04(A)(7) from the jury's consideration. (*Id.*). On July 30, 2002, the trial court returned its recommendation that Jackson be sentenced to death for Counts One and Two. (*Id.*).

{¶6} At the sentencing hearing on August 5, 2002, the trial court accepted the jury's recommendation and sentenced Jackson to death for the aggravated murders of Grant and Williams, Counts One and Two, respectively. (Doc. Nos. 344, 345). The trial court also imposed prison terms with respect to Counts Three through Nine and the related firearm specification in Count Three. (Doc. No. 345). That same day, the trial court filed its sentencing opinion and its judgment entry of sentence. (Doc. Nos. 344, 345).

{¶7} Jackson perfected a direct appeal as of right to the Supreme Court of Ohio. In *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, the Supreme Court

of Ohio affirmed Jackson's convictions and sentences on all non-capital offenses.[1]

*Id.* at ¶ 23. With respect to the capital offenses, the Supreme Court of Ohio affirmed

Jackson's convictions for the aggravated murders of Grant and Williams and

affirmed the death sentence for the aggravated murder of Williams. *Id.* at ¶ 23, 25.

However, the court found that the trial court abused its discretion in denying

Jackson's request to inform prospective jurors that one of the murder victims was a

young child. *Id.* at ¶ 24. Accordingly, the Supreme Court of Ohio vacated Jackson's

death sentence for the murder of Grant and remanded the cause to the trial court for

the purpose of resentencing on that count only. *Id.* Accordingly, on January 8,

2007, the trial court held a resentencing hearing and sentenced Jackson to life

imprisonment without parole with respect to the murder of Grant. (Doc. No. 443).

Jackson filed an application to reopen his direct appeal, which the Supreme Court

of Ohio denied. *State v. Jackson*, 110 Ohio St.3d 1435, 2006-Ohio-3862.

Subsequently, the Supreme Court of the United States denied Jackson's petition for

writ of certiorari. *Jackson v. Ohio*, 548 U.S. 912, 126 S.Ct. 2940 (2006).

{¶8} On August 13, 2003, while his direct appeal was pending, Jackson filed

a petition for postconviction relief, which the trial court denied. (Doc. Nos. 410,

426). This court affirmed the trial court's decision on appeal. *State v. Jackson*, 3d

---

[1] In Jackson's direct appeal from his convictions and sentence, the Supreme Court of Ohio recited much of the factual background of this case, and we will not duplicate those efforts here. *See State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981.

Dist. Allen No. 1-04-31, 2004-Ohio-5350, ¶ 25. The Supreme Court of Ohio declined further review. *State v. Jackson*, 108 Ohio St.3d 1476, 2006-Ohio-665.

{¶9} On June 26, 2007, Jackson filed a petition for a writ of habeas corpus with the United States District Court for the Northern District of Ohio raising twenty claims. *Jackson v. Houk*, N.D.Ohio No. 3:07CV0400, 2008 WL 1946790 (May 1, 2008). The district court denied Jackson's claims and declined to grant a certificate of appealability on any of the claims. *Id.* at *82. The United States Court of Appeals for the Sixth Circuit affirmed the district court's decision. *Jackson v. Houk*, 687 F.3d 723 (6th Cir.2012). On February 19, 2013, the Supreme Court of the United States declined Jackson's petition for writ of certiorari. *Jackson v. Houk*, 568 U.S. 1164, 133 S.Ct. 1243.

{¶10} On September 4, 2019, Jackson filed a second petition for postconviction relief in the trial court. (Doc. No. 456). In his petition for postconviction relief, Jackson argued that his death sentence is void or voidable because he is intellectually disabled and ineligible for execution. (*Id.*). In his petition for postconviction relief, Jackson acknowledged that he was filing outside the timeframe prescribed by R.C. 2953.21(A) and that it was his second petition for postconviction relief. (*Id.*). Nevertheless, Jackson argued that his petition met the exceptions outlined in R.C. 2953.23, and he argued that the trial court should therefore consider the merits of his claim. (*Id.*). On September 25, 2019, the State

filed its response and motion to dismiss Jackson's petition for postconviction relief. (Doc. No. 457). On September 26, 2019, the trial court filed its judgment entry denying Jackson's petition for postconviction relief without holding an evidentiary hearing. (Doc. No. 458).

{¶11} On October 11, 2019, Jackson filed his notice of appeal. (Doc. No. 461). He raises one assignment of error for our review.

### Assignment of Error

**The trial court improperly failed to grant jurisdiction under R.C. 2953.23 and review Appellant Jackson's claims and evidence proving that he is intellectually disabled and ineligible for execution. (Dkt. 458.) It improperly found that R.C. 2953.23(A)(1) does not apply, improperly applied res judicata, and failed to afford Jackson due process in the consideration of his claims and evidence. This assignment of error relates to Issues for Review 1-4.**

{¶12} In his assignment of error, Jackson argues that the trial court erred in denying his petition for postconviction relief without a hearing on the grounds that it was both time barred and barred by res judicata.

{¶13} "R.C. 2953.21 governs petitions for post-conviction relief." *State v. Wine*, 3d Dist. Auglaize No. 2-15-07, 2015-Ohio-4726, ¶ 10, citing *State v. Kinstle*, 3d Dist. Allen No. 1-12-32, 2013-Ohio-850, ¶ 10. The statute sets forth who may petition for postconviction relief:

Any person who has been convicted of a criminal offense * * * and

who claims that there was such a denial or infringement of the

-6-

person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

R.C. 2953.21(A)(1)(a). The statute sets forth the time requirements for filing a petition for postconviction relief and provides, in relevant part,

a petition under division (A)(1) of this section shall be filed no later than three hundred sixty-five days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication or, if the direct appeal involves a sentence of death, the date on which the trial transcript is filed in the supreme court. If no appeal is taken, except as otherwise provided in section 2953.23 of the Revised Code, the petition shall be filed no later than three hundred sixty-five days after the expiration of the time for filing the appeal.

R.C. 2953.21(A)(2). "'A trial court lacks jurisdiction to entertain an untimely or successive petition for postconviction relief unless the petitioner establishes that one

of the exceptions in R.C. 2953.23(A) applies.'" *State v. Cunningham*, 3d Dist. Allen No. 1-15-61, 2016-Ohio-3106, ¶ 13, quoting *State v. Chavis*, 10th Dist. Franklin No. 15AP-557, 2015-Ohio-5549, ¶ 14, citing *State v. Campbell*, 10th Dist. Franklin No. 12AP-109, 2012-Ohio-5195, ¶ 9. "Therefore, if the petition has been untimely filed, the trial court cannot consider the substantive merits of the petition and must summarily dismiss it without addressing the merits of the petition." *State v. Unsworth*, 6th Dist. Lucas No. L-14-1238, 2015-Ohio-3197, ¶ 16, citing *State v. Flower,* 7th Dist. Mahoning No. 14 MA 148, 2015-Ohio-2335, ¶ 12 and *State v. Rodriguez*, 6th Dist. Wood No. WD-14-075, 2015-Ohio-562, ¶ 6.

{¶14} However, as indicated, an exception to the jurisdictional time limit is contained in R.C. 2953.23(A), which states as follows:

(A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless division (A)(1) or (2) of this section applies:

(1) Both of the following apply:

(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must

rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(b)   The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

R.C. 2953.23(A).

{¶15} Once a court has determined that a petition is untimely and no exception applies, no further inquiry into the merits of the case is necessary. *See State v. Morgan*, 3d Dist. Shelby No. 17-04-11, 2005-Ohio-427, ¶ 6, citing *State v. Beaver*, 131 Ohio App.3d 458 (11th Dist.1998).   Trial courts should dismiss untimely postconviction petitions for lack of jurisdiction; nevertheless, a trial court does not commit reversible error by denying an untimely postconviction petition. *State v. Hatfield*, 10th Dist. Franklin No. 07AP-784, 2008-Ohio-1377, ¶ 8, citing

*State v. Hamilton*, 10th Dist. Franklin No. 03AP-852, 2004-Ohio-2573, ¶ 9 and *State v. Hensley*, 9th Dist. Lorain No. 03CA008293, 2003-Ohio-6457, ¶ 7. The trial court determined that Jackson failed to establish an exception to the statutory time limit, and we review that decision under an abuse of discretion standard. *State v. Allen*, 6th Dist. Lucas No. L-17-1085, 2017-Ohio-7976, ¶ 10, citing *Unsworth*, 2015-Ohio-3197, at ¶ 16 and *Rodriguez*, 2015-Ohio-562, at ¶ 7.

{¶16} Jackson timely filed his initial petition for postconviction relief on August 13, 2003. Thus, because this is Jackson's second, and thus successive, petition for postconviction relief, an exception set forth in R.C. 2953.23(A)(1)(a) must apply for the trial court to have jurisdiction to entertain the merits of his petition. Here, Jackson argues that both of the exceptions set forth in R.C. 2953.23(A)(1) apply to his successive petition for postconviction relief.

{¶17} First, we will address Jackson's argument that he was unavoidably prevented from discovery of the facts upon which he must rely to present his claim for relief under R.C. 2953.23(A)(1)(a). Specifically, Jackson argues that he was unavoidably prevented from discovering his intellectual disability. "A defendant is 'unavoidably prevented' from the discovery of facts if he had no knowledge of the existence of those facts and could not have, in the exercise of reasonable diligence, learned of their existence within the time specified for filing his petition for postconviction relief." *Cunningham*, 2016-Ohio-3106, at ¶ 19. "'And the "facts"

contemplated by R.C. 2953.23(A)(1)(a) are the historical facts of the case, which occurred up to and including the time of conviction.'" *Id.*, quoting *State v. Ruark*, 10th Dist. Franklin No. 15AP-142, 2015-Ohio-3206, ¶ 11, citing *State v. Turner*, 10th Dist. Franklin No. 06AP-876, 2007-Ohio-1468, ¶ 11. Further, the postconviction statute requires that a petitioner be unavoidably prevented from discovering facts, not the law. *State v. Clay*, 7th Dist. Mahoning No. 17 MA 0113, 2018-Ohio-985, ¶ 12.

{¶18} In his present petition for postconviction relief, Jackson argues that he is intellectually disabled and is therefore ineligible for execution under *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242 (2002).[2] On June 20, 2002, in *Atkins v. Virginia*, the Supreme Court of the United States held that executing intellectually disabled persons is cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. *Id.* at 321. Furthermore, in *State v. Lott*, which was decided on December 11, 2002, the Supreme Court of Ohio set forth a three-part test to be applied in Ohio for courts making a determination of whether a defendant is intellectually disabled and ineligible for execution under *Atkins*. *State v. Lott*, 97 Ohio St.3d 303, 2002-Ohio-6625, ¶ 18, *overruled by State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, ¶ 97.

---

[2] Although earlier courts used the term "mental retardation," we elect to use the phrase "intellectual disability" throughout the opinion. *See Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242 (2002) and *State v. Lott*, 97 Ohio St.3d 303, 2002-Ohio-6625.

{¶19} Jackson argues that he was unavoidably prevented from timely discovering his intellectual disability because during his initial postconviction proceedings, the trial court denied his request to retain a forensic psychologist experienced in examining individuals charged with capital offenses. For the reasons that follow, we disagree.

{¶20} First, a review of Jackson's initial petition for postconviction relief and request for an appropriation of funds reveals that Jackson did not actually raise an *Atkins* claim in his initial postconviction petition or request an appropriation of funds specifically for the purpose of evaluating whether he has an intellectual disability.

{¶21} On August 13, 2003, Jackson filed his initial petition for postconviction relief raising 26 claims for relief, including several claims that his trial counsel was ineffective because he failed to develop and present compelling mitigation evidence. (Doc. No. 410). Specifically, Jackson argued that his trial counsel failed to thoroughly investigate his background, including his juvenile record, his mother's history of mental illness, addiction, and neglect of Jackson, and the records of his "lengthy and bizarre history with Children's Services." (*Id.*). Jackson also alleged that his trial counsel erred by not presenting mitigating evidence regarding his "severe problems with anger, with drugs, with education, and with lack of respect for the law * * *." (*Id.*). Jackson further argued in his

initial petition for postconviction relief that his trial counsel failed to request or demonstrate the need for adequate investigative and expert assistance during the trial and penalty phase "in order for counsel to fully and thoroughly investigate the life history and background of [Jackson] and to fully present that life history and background and explain the effect of that history on his development at the penalty phase of the trial." (*Id.*). Jackson alleged that his trial counsel was ineffective for failing to employ an expert to "explain the devastating effects of being raised in a family and in an environment where drugs and alcohol abuse played such a dominant role." (*Id.*).

{¶22} On August 29, 2003, Jackson filed a motion for appropriation of funds for investigative and expert assistance to permit his postconviction counsel to fully investigate and present the claims in his petition for postconviction relief. (Doc. No. 418). In his brief in support of his motion for appropriation of funds, Jackson requested funding for the following expert and investigative assistance: "ballistics expert; gunshot trajectory expert; crime scene reconstruction expert; jury selection (jury interview) expert; mitigation specialist; forensic psychologist (with an expertise in the effects of childhood trauma and exposure to drug and alcohol abuse and its effect on development); cultural expert and attorney expert to testify to the prevailing professional norms." (*Id.*). On September 11, 2003, the trial court denied

Jackson's motion for appropriation of funds to hire expert and investigative assistance. (Doc. No. 419).

{¶23} Thus, although Jackson argues that his motion for appropriation of funds was for the purpose of examining him for an intellectual disability, a review of Jackson's petition for postconviction relief and motion for appropriation of funds reveals that Jackson was specifically requesting funds to further his claim that his trial counsel was ineffective for failing to develop and present mitigating evidence regarding his childhood trauma and upbringing rather than to develop an *Atkins* claim. As the Second District held in *State v. Bays*, "[t]here is a significant difference between expert testimony offered for mitigation purposes and expert testimony offered for *Atkins* purposes." *State v. Bays*, 159 Ohio App.3d 469, 2005-Ohio-47, ¶ 23 (2d Dist.). Here, Jackson specifically stated in his motion for appropriation of funds that he was requesting funding to develop the claims he raised in his initial petition for postconviction relief. Although his petition for postconviction relief included claims that his trial counsel was ineffective for failing to develop and present mitigation, his petition for postconviction relief did not include an allegation that he was intellectually disabled and, thus, ineligible for the death penalty under *Atkins*. Accordingly, Jackson's request for funding for mitigation purposes is distinct from a request for funding to develop an *Atkins* claim.

{¶24} Furthermore, Jackson's initial petition for postconviction relief was filed after *Atkins* and *Lott*, and thus, Jackson's initial postconviction counsel should have been aware of the bar against executing intellectually disabled individuals when filing Jackson's petition for postconviction relief. *See Clay*, 2018-Ohio-985, at ¶ 12 ("Appellant's alleged state of being unaware of the law on postconviction relief does not satisfy an exception to the statute's timeliness requirements."); *State v. Kane*, 10th Dist. Franklin No. 16AP-781, 2017-Ohio-7838, ¶ 17 ("[I]gnorance of the law does not excuse appellant's untimely filing of her petition for postconviction relief."). Nevertheless, Jackson failed to raise an *Atkins* claim during his initial petition for postconviction relief. Accordingly, because Jackson's counsel did not raise an *Atkins* claim or file a petition for postconviction relief requesting funding specifically for the purpose of developing an *Atkins* claim, we cannot say that Jackson was unavoidably prevented from discovering his intellectual disability as his initial postconviction petition could have raised an *Atkins* claim or included a request for funding to develop an *Atkins* claim.

{¶25} Furthermore, although Jackson argues that he was unavoidably prevented from discovering his intellectual disability, there is no indication that he sought alternative funding to discover his intellectual disability, particularly after the trial court denied his motion for appropriation of funds. Jackson's lack of reasonable diligence is exemplified by the fact that, many years later, he was

actually able to secure alternative funding to discover the facts which he now uses to support his claim that he is intellectually disabled. (Doc. No. 456).

{¶26} Jackson also argues that he was unavoidably prevented from discovering the facts that support his claim of intellectual disability due to the ineffective assistance of his trial counsel. (Appellant's Brief at 24-29). Jackson argues that if his trial counsel had sought cognitive testing of Jackson, his trial counsel would have discovered the facts that would have supported his future claim that he is intellectually disabled and thus ineligible for the death penalty under *Atkins*. Although Jackson contends that he would not have been able to raise his *Atkins* claim at the time of his initial trial and sentencing because *Lott* had not yet been decided, he contends that evidence of his intellectual abilities should have been used as mitigating evidence at the sentencing phase.

{¶27} However, as discussed above, Jackson actually did allege in his initial petition for postconviction relief that his trial counsel was ineffective for failing to develop and present mitigating evidence and the trial court found his argument to be without merit. (Doc. Nos. 410, 423). Further, this court affirmed the trial court's decision on appeal. *Jackson*, 2004-Ohio-5350, at ¶ 25. Thus, Jackson's previous trial counsel was previously determined to not be ineffective with respect to the preparation and presentation of mitigating evidence. *See State v. Crockett*, 8th Dist. Cuyahoga No. 103199, 2016-Ohio-220, ¶ 16 (finding the petitioner failed to

demonstrate he was unavoidably prevented from discovering facts to support his claim for relief because his trial counsel was effective). Furthermore, Jackson had an opportunity to raise his *Atkins* claim in his initial postconviction petition, but failed to do so. Yet, Jackson does not allege that his initial postconviction counsel was ineffective for failing to discover the same evidence or failing to raise an *Atkins* claim during his initial postconviction proceedings. *See State v. Peters*, 9th Dist. Wayne No. 09CA0007, 2009-Ohio-6024, ¶ 11 (finding that "the record does not indicate that the trial court would have found Peters provided clear and convincing proof that she was unavoidably prevented from discovering her medical condition but for the ineffective assistance of counsel").

{¶28} "Moreover, '[t]he fact that appellant raises claims of ineffective assistance of counsel suggests that the bases for his claims could have been uncovered if "reasonable diligence" had been exercised.'" *Cunningham*, 2016-Ohio-3106, at ¶ 22, quoting *State v. Creech*, 4th Dist. Scioto No. 12CA3500, 2013-Ohio-3791, ¶ 18. Accordingly, we find Jackson's argument that he was unavoidably prevented from discovering the factual basis of his second petition for postconviction relief due to the ineffective assistance of his trial counsel to be without merit.

{¶29} In conclusion, because Jackson failed to raise an *Atkins* claim during his initial postconviction proceedings, failed to request funds for the purpose of

developing an *Atkins* claim, and failed to pursue alternative funding, we cannot find that Jackson exercised reasonable diligence to learn of his intellectual disability within the time specified for his petition for postconviction relief. Accordingly, we cannot find that Jackson was unavoidably prevented from discovering the facts upon which he must rely to present his claim for relief.

{¶30} Having concluded that Jackson was not unavoidably prevented from discovering the facts upon which he must rely to present his claim for relief, we now address Jackson's argument that the Supreme Court of the United States recognized a new substantive right that retroactively applies to persons in his situation.

{¶31} As discussed previously, the Supreme Court of the United States decided *Atkins*, which held that executing intellectually disabled persons violates the Eighth Amendment, in June 2002, prior to Jackson's trial, sentencing, and initial petition for postconviction relief. *Atkins*, 536 U.S. at 321. In *Atkins*, the Court held that although intellectually disabled persons are not exempt from criminal sanctions, their "disabilities in areas of reasoning, judgment, and control of their impulses" "diminish their personal culpability." *Id.* at 306, 318. Accordingly, "they do not act with the level of moral culpability that characterizes the most serious adult conduct." *Id.* at 306. Thus, the Court held that putting an intellectually disabled person to death is not a proportionate punishment. *Id.* at 311. However, the Court did not dictate a specific standard for determining whether an offender was

intellectually disabled, but stated that it would "'leave to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences.'" *Id.* at 317, quoting *Ford v. Wainwright*, 477 U.S. 399, 405, 416-417, 106 S.Ct. 2595 (1986).

{¶32} In *State v. Lott*, which was decided on December 11, 2002, the Supreme Court of Ohio set forth a three-part test to be applied in Ohio for courts making a determination of whether a defendant is intellectually disabled and ineligible for execution under *Atkins*. *Lott*, 2002-Ohio-6625, at ¶ 18, *overruled by Ford*, 2019-Ohio-4539, at ¶ 97. The Supreme Court of Ohio decided *Lott* before Jackson filed his initial petition for postconviction relief. Thus, Jackson had the benefit of both *Atkins* and *Lott* when he filed his initial petition for postconviction relief.

{¶33} Nevertheless, Jackson argues that following the conclusion of his state proceedings, the Supreme Court of the United States decided a series of three cases which recognized new rights under the Eighth and Fourteenth Amendments that apply retroactively to him. Jackson argues that because the cases were decided subsequent to the filing of his initial petition for postconviction relief, his successive petition for postconviction relief meets the jurisdictional requirement under R.C. 2953.23. We disagree.

{¶34} On May 27, 2014, in *Hall v. Florida*, the Supreme Court of the United States held that a Florida law, which defined intellectual disability as having an IQ of 70 or below, was too rigid. 572 U.S. 701, 704, 134 S.Ct. 1986 (2014). After analyzing the Eighth Amendment principles behind its decision in *Atkins*, the court in *Hall* stated that "[t]he question this case presents is how intellectual disability must be defined in order to implement these principles and the holding of *Atkins*." *Id.* at 709. The court held that the Florida definition of intellectual disability was unconstitutional because it created an "unacceptable risk" that persons with intellectual disabilities would be executed. *Id.* at 704. The court cautioned that states' discretion in determining appropriate ways to enforce the restriction on executing intellectually disabled individuals is not "unfettered" and should "be informed by the medical community's diagnostic framework." *Id.* at 719, 721. Accordingly, the court held that "[i]n determining who qualifies as intellectually disabled, it is proper to consult the medical community's opinions." *Id.* at 710. Relying on the most recent versions of medical diagnostic manuals, the Supreme Court concluded that Florida had "disregard[ed] established medical practice" and diverged from the practices and trends in other states. *Id.*

{¶35} In *Moore v. Texas* ("*Moore I*"), which was decided in 2017, the Supreme Court of the United States vacated a Texas Court of Criminal Appeals's decision determining that Moore was not intellectually disabled. *Moore v. Texas*,

___U.S.___, 137 S.Ct. 1039, 1053 (2017). The court held that the Texas Court of Criminal Appeals erred by "fail[ing] adequately to inform itself of the 'medical community's diagnostic framework'" and adopting outdated standards for the determination of what constituted an intellectual disability for *Atkins* claims. *Id.,* quoting *Hall* at 722.

{¶36} In a subsequent appeal, the Supreme Court of the United States determined in *Moore v. Texas*, ___U.S.___, 139 S.Ct. 666 (2019) ("*Moore II*"), that the Texas Court of Criminal Appeals's decision on remand was inconsistent with the court's directive in *Moore I* because the language and content in the Texas court's opinion rested upon analysis which "too closely resembles" that which the court found improper in *Moore I*. *Moore II* at 672.

{¶37} On November 7, 2019, in *State v. Ford*, the Supreme Court of Ohio revisited the three-part test set forth in *Lott* for making a determination of whether a defendant is intellectually disabled and ineligible for execution under *Atkins*. *Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, at ¶ 76-100. Upon review of the test outlined in *Lott*, the Supreme Court of Ohio determined that *Lott*'s holding that there exists a rebuttable presumption that a defendant with an IQ score above 70 is not intellectually disabled is no longer valid. *Id.* at ¶ 100. In so deciding, the Supreme Court of Ohio expressly overruled *Lott*. *Id.*

{¶38} In place of the three-part test outlined in *Lott*, the Supreme Court of Ohio held that a court determining whether a defendant is intellectually disabled must consider three core elements:

(1) intellectual-functioning deficits (indicated by an IQ score approximately two standard deviations below the mean—i.e., a score of roughly 70 or lower when adjusted for the standard error of measurement), (2) significant adaptive deficits in any of the three adaptive-skill sets (conceptual, social, and practical), and (3) the onset of these deficits while the defendant was a minor.

*Id.* at ¶ 100.

{¶39} Jackson argues that because the Supreme Court of Ohio held that the standard outlined in *Lott* for determining whether a defendant is intellectually disabled is no longer valid, "*Hall*, therefore, represented a new, substantive change to Ohio law" which must be retroactively applied to his successive petition for postconviction relief. (Appellant's Reply Brief at 8). However, Jackson's reliance on *Ford* is misplaced.

{¶40} In *State v. Parker*, the Supreme Court of Ohio held that although R.C. 2953.23(A) "permits a common pleas court to entertain an untimely or successive petition [for postconviction relief] based on a new state or federal right recognized by the United States Supreme Court, it provided no exception allowing an untimely

or successive petition to be granted based on a new decision of [the Supreme Court of Ohio]." *State v. Parker*, 157 Ohio St.3d 460, 2019-Ohio-3848, ¶ 2. Accordingly, the Supreme Court of Ohio's holding in *Ford* does not provide an exception to the jurisdictional requirements of R.C. 2953.21. *See id. See also State v. Lee*, 3d Dist. Crawford No. 3-18-14, 2018-Ohio-3715, ¶ 12.

{¶41} Jackson next argues that the United States Supreme Court decisions in *Hall*, *Moore I*, and *Moore II* recognized new substantive rights under the Eighth and Fourteenth Amendments which apply retroactively to him and that his claim is based on those rights. Specifically, Jackson argues that the decisions in *Hall*, *Moore I*, and *Moore II* "provide[ ] him an opportunity to seek relief from his death sentence by proving his intellectual disability under the appropriate, applicable medical standards." (Appellant's Reply Brief at 8).

{¶42} In general, "'new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced.'" *Welch v. United States*, ___U.S.___, 136 S.Ct. 1257, 1264 (2016), quoting *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060 (1989). However, "new substantive rules do apply retroactively." *Id.* at 1259-1260, citing *Teague* at 310 and *Schriro v. Summerlin*, 542 U.S. 348, 351, 124 S.Ct. 2519 (2004). A decision is substantive if it involves a "'constitutional determination[ ] that place[s] particular conduct or persons * * * beyond the State's power to punish.'" *Id.* at 1265, quoting

*Schriro* at 351-352. *See Montgomery v. Louisiana*, ___U.S.___, 136 S.Ct. 718, 729 (2016) (A rule is substantive if it precludes "a certain category of punishment for a class of defendants because of their status or offense.").

{¶43} It is not disputed that the Supreme Court of the United States did not expressly make *Hall*, *Moore I*, and *Moore II* retroactive. *In re Payne*, 722 Fed.Appx. 534, 538 (6th Cir.2018). Yet, Jackson argues that the *Hall* and *Moore* decisions themselves are retroactive applications of the rules they announce. (Appellant's Brief at 43-44). However, this argument is without merit because in *Hall* and *Moore*, the Supreme Court of the United States "merely analyzed the application of *Atkins* claims that were appropriately raised in state post-conviction proceedings." *Payne* at 538.

{¶44} Nevertheless, some courts have determined that *Hall* and *Moore* apply retroactively. *See White v. Commonwealth*, 500 S.W.3d 208, 215 (Ky. 2016), *abrogated on other grounds*, *Woodall v. Commonwealth*, 563 S.W.3d 1 (Ky. 2018) (*Hall* "is 'a substantive restriction on the State's power to take the life' of individuals suffering from intellectual disabilities. We are dealing here with a U.S. Supreme Court directive that not only proscribes intellectually disabled people from being put to death, but defines the manner in which the mental deficiencies of offenders must be evaluated. Therefore, *Hall* must be retroactively applied.").

**{¶45}** However, we choose to follow a substantial and growing body of case law that has declined to apply *Hall* and *Moore* retroactively. *See Phillips v. State*, ___So.3d___, 2020 WL 2563476, *4-5 (Fla. 2020) (holding that "[t]he categorical prohibition on executing the intellectually disabled was not expanded by *Hall*" and receding from the Court's previous holding that *Hall* warranted retroactive application); *Payne* at 538-539 (declining to apply *Moore* and *Hall* retroactively); *In re Henry*, 757 F.3d 1151, 1158, 1161 (11th Cir.2014) (holding that "*Hall* did indeed announce a new rule of constitutional law" that is not retroactive because it "merely provides new procedures for ensuring that States do not execute members of an already protected group."); *In re Richardson*, 802 Fed.Appx. 750, 755-757 (4th Cir.2020) (declining to apply *Hall* retroactively); *In re Hill*, 777 F.3d 1214, 1223 (11th Cir.2015) ("*Hall* merely provides new procedures for ensuring that States do not execute members of an already protected group."); *Goodwin v. Steele*, 814 F.3d 901, 904 (8th Cir.2014) (denying petitioner's motion to authorize a successive application predicated upon *Hall* because the petitioner "has not made a prima facie showing that the Supreme Court has held that *Hall* is retroactive"); *Williams v. Kelley*, 858 F.3d 464, 474 (8th Cir.2017) (declining to apply *Moore* retroactively); *Weathers v. Davis*, 915 F.3d 1025, 1026-1027 (5th Cir.2019) (declining to apply *Moore* retroactively); *Kilgore v. Sec'y, Fla. Dep't of Corr.*, 805 F.3d 1301, 1314 (11th Cir.2015) (holding that *Hall* is not retroactively applicable

because it "merely provides new procedures for ensuring that states follow the rule enunciated in *Atkins*" and did not expand the class of individuals protected by *Atkins*'s prohibition against the execution of individuals who are intellectually disabled); *Lynch v. Hudson*, S.D.Ohio No. 2:07-CV-948, 2017 WL 3404773, *2-3 (Aug. 9, 2017) (declining to apply *Moore* and *Hall* retroactively); *Elmore v. Shoop*, S.D.Ohio No. 1:07-CV-776, 2020 WL 3410764, *10 (June 22, 2020) (stating that *Hall* and *Moore* do not apply retroactively); *Prieto v. Davis*, E.D.Va. No. 3:13CV849-HEH, 2014 WL 3867554, *41-42 (Aug. 5, 2014) (*Hall* does not apply retroactively). Accordingly, we find that *Hall* and *Moore* did not announce new substantive rights that must be applied retroactively to Jackson.

{¶46} Having determined that Jackson failed to satisfy R.C. 2953.23(A)(1)(a), we need not decide the question of whether Jackson showed that "but for constitutional error at the sentencing hearing, no reasonable factfinder would have found [Jackson] eligible for the death sentence." R.C. 2953.23(A)(1)(b). *See Cunningham*, 2016-Ohio-3106, at ¶ 22. Accordingly, because Jackson did not make the requisite showing under R.C. 2953.23(A)(1), the trial court lacked jurisdiction to consider Jackson's untimely petition for postconviction relief. *Lee*, 2018-Ohio-3715, at ¶ 12.

{¶47} Because Jackson's petition is untimely and the trial court lacked jurisdiction to consider the petition, the trial court should have dismissed Jackson's

petition; however, the trial court did not abuse its discretion by denying, rather than dismissing, Jackson's petition. *See State v. Carter*, 3d Dist. Allen No. 1-17-09, 2017-Ohio-4354, ¶ 12, citing *Hatfield*, 2008-Ohio-1377, at ¶ 8, citing *Hamilton*, 2004-Ohio-2573, at ¶ 9 and *Hensley*, 2003-Ohio-6457, at ¶ 7.

**{¶48}** Although Jackson argues that the trial court erred by rejecting his second petition for postconviction relief without a hearing, "[t]he filing of a petition for postconviction relief does not automatically entitle the petitioner to an evidentiary hearing." *State v. Andrews*, 3d Dist. Allen No. 1-11-42, 2011-Ohio-6106, ¶ 11, citing *State v. Calhoun*, 86 Ohio St.3d 279, 282 (1999). Under R.C. 2953.21(D), "[b]efore granting a hearing on a petition * * *, the court shall determine whether there are substantive grounds for relief." *See State v. Brown*, 3d Dist. Allen No. 1-11-68, 2012-Ohio-2126, ¶ 6, citing *Calhoun* at 282-283; *State v. Schwieterman*, 3d Dist. Mercer No. 10-09-12, 2010-Ohio-102, ¶ 22, citing *State v. Jones*, 3d Dist. Defiance No. 4-07-02, 2007-Ohio-5624, ¶ 12. "In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner * * *." R.C. 2953.21(D).

**{¶49}** "'[I]f the court determines that there are no substantive grounds for relief, it may dismiss the petition without an evidentiary hearing.'" *State v. Driskill*, 3d Dist. Mercer Nos. 10-07-03 and 10-07-04, 2008-Ohio-827, ¶ 13, quoting *Jones*

at ¶ 14. "The decision to grant the petitioner an evidentiary hearing is left to the sound discretion of the trial court." *Andrews* at ¶ 11, citing *Calhoun* at 284. Accordingly, "[w]e review the trial court's dismissal of a post-conviction petition without a hearing for abuse of discretion." *State v. Jeffers*, 10th Dist. Franklin No. 10AP-1112, 2011-Ohio-3555, ¶ 23, citing *State v. Banks*, 10th Dist. Franklin Nos. 10AP-1065, 10AP-1066, and 10AP-1067, 2011-Ohio-2749, ¶ 11. *See Driskill* at ¶ 14. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When the abuse of discretion standard applies, an appellate court is not to substitute its judgment for that of the trial court. *State v. Thompson*, 3d Dist. Henry No. 7-16-10, 2017-Ohio-792, ¶ 11. Because Jackson has not demonstrated that one of the exceptions in R.C. 2953.23(A) applies to this case, we find that the trial court did not abuse its discretion by denying Jackson's untimely, successive postconviction relief without an evidentiary hearing. *See State v. Workman*, 3d Dist. Auglaize No. 2-19-09, 2019-Ohio-5379, ¶ 17.

{¶50} Furthermore, because we have found that the trial court lacked jurisdiction to consider Jackson's petition, we need not address Jackson's argument that the trial court erred by determining that Jackson's petition for postconviction relief was barred by res judicata.

{¶51} Finally, Jackson argues that the trial court denied him fair process of his claims and evidence. Specifically, Jackson alleges that the trial court failed to abide by R.C. 2953.21(D) and give proper consideration to Jackson's petition, thereby violating his due process rights and rights to fair consideration. R.C. 2953.21(D) provides that before granting a hearing on a petition for postconviction relief, "the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, [and] all the files and records pertaining to the proceedings against the petitioner * * *." Jackson asserts that the trial court failed to afford him the full and necessary consideration required in capital cases due to the timing of the trial court's decision on his successive petition for postconviction relief. As Jackson notes, on September 4, 2019, he filed his petition for postconviction relief, which was 45 pages in length and contained over 500 pages of exhibits. On September 25, 2019, the State filed its answer and motion to dismiss. The following day, the trial court denied Jackson's second petition for postconviction relief. Jackson contends that "[t]he timing suggests that the court did not review the evidence [he] submitted to support his claim that he is intellectually disabled." (Appellant's Brief at 47). Jackson also argues that because the trial court denied his second petition for postconviction relief before he was served with the State's response, the trial court did not permit Jackson to know of or respond to the State's argument prior to denying his petition. (*Id.*). However,

Jackson fails, in both his merit brief and reply brief, to provide legal authority supporting his contention that the 21 days that the trial court had to consider his second petition for postconviction relief was insufficient for the trial court to give his petition full and necessary consideration. "Where an appellant fails to develop an argument in support of his assignment of error, this Court will not create one for him." *State v. Franks*, 9th Dist. Summit No. 28533, 2017-Ohio-7045, ¶ 16, citing *State v. Harmon*, 9th Dist. Summit No. 26426, 2013-Ohio-2319, ¶ 6, citing App.R. 16(A)(7) and *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998). "'If an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out.'" *Id.*, quoting *Cardone* at *8. Thus, we reject Jackson's argument that the trial court failed to abide by R.C. 2953.21(D) and give proper consideration to his second petition for postconviction relief.

{¶52} Accordingly, Jackson's assignment of error is overruled.

{¶53} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**