[Cite as *State v. Martin*, 2025-Ohio-144.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2024-T-0001 |
| Plaintiff-Appellee, | |
| - vs - | Civil Appeal from the<br>Court of Common Pleas |
| DAVID MARTIN, | |
| Defendant-Appellant. | Trial Court No. 2012 CR 00735 |

**O P I N I O N**

Decided: January 21, 2025
Judgment: Affirmed

*Dennis Watkins*, Trumbull County Prosecutor; *Christopher D. Becker* and *Ryan J. Sanders*, Assistant Prosecutors, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Joseph R. Medici*, Federal Public Defender; *Adam M. Rusnak* and *Bridget L. Kennedy*, Assistant Federal Public Defenders, 10 West Broad Street, Suite 1020, Columbus, OH 43215 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Defendant-appellant, David Martin ("Mr. Martin"), appeals the judgment of the Trumbull County Court of Common Pleas dismissing his successive petition for postconviction relief.

{¶2} Mr. Martin raises four assignments of error, contending that the trial court erred in dismissing his petition because (1) the Supreme Court of the United States recognized new federal or state rights that apply retroactivity to him; (2) he was personally unavoidably prevented from presenting his ineffective assistance of counsel claim earlier

because he is intellectually disabled, indigent, incarcerated, and required effective counsel; and (3) he has presented uncontroverted proof that he is intellectually disabled and ineligible for execution. Within his fourth assigned error, Mr. Martin contends that to the extent we conclude the trial court did not err in dismissing his successive postconviction petition pursuant to R.C. 2953.23, then we must find R.C. 2953.23 unconstitutional "as applied under the circumstances" and "vacate his death sentence."

{¶3} After a careful review of the record and pertinent law, we find as follows:

{¶4} (1) The Supreme Court of the United States did not recognize new retroactive rights in the cases that Mr. Martin cites.

{¶5} (2) Mr. Martin did not show that he was unavoidably prevented from discovering the facts upon which he must rely to present his intellectual-disability claim based on ineffective assistance of trial counsel and initial postconviction counsel.

{¶6} (3) Mr. Martin has not established that the requirements in R.C. 2953.23 for successive postconviction petitions are unconstitutional as applied to him.

{¶7} This court's findings are based solely on the Ohio Revised Code's mandatory requirements for a successive postconviction petition. We take no position on the substantive merits of Mr. Martin's intellectual-disability claim.

{¶8} Thus, Mr. Martin's assignments of error are without merit, and we affirm the judgment of the Trumbull County Court of Common Pleas.

**Substantive and Procedural History**

{¶9} In 2012, Mr. Martin shot and killed Jeremy Cole and attempted to kill Melissa Putnam during a kidnapping and robbery at Ms. Putnam's home in Warren, Ohio. In September 2014, a jury found Mr. Martin guilty of aggravated murder with three death

2

specifications (and other offenses), and he was sentenced to death. Mr. Martin filed a direct appeal of right to the Supreme Court of Ohio, asserting ten propositions of law, including ineffective assistance of trial counsel. The Supreme Court of Ohio affirmed Mr. Martin's convictions and death sentence in *State v. Martin*, 2017-Ohio-7556.

{¶10} In 2016, Mr. Martin, through counsel, filed a "petition to vacate or set aside conviction and sentence" in the trial court, asserting ineffective assistance of trial counsel. The trial court granted summary judgment in favor of the State. This court affirmed the trial court's judgment in *State v. Martin*, 2018-Ohio-3244 (11th Dist.), *appeal not accepted*, 2018-Ohio-5209.

{¶11} On March 29, 2022, Mr. Martin, through counsel, filed a "petition to vacate death sentence pursuant to Ohio Revised Code Sections 2953.21 and 2953.23," asserting four grounds for relief. First, Mr. Martin contended that he is intellectually disabled and exempt from execution under the federal and Ohio Constitutions. Second, Mr. Martin contended that his sentence of death is void or voidable because no jury has found that he lacks an intellectual disability. Third, Mr. Martin contended that his trial counsel provided ineffective assistance by failing to investigate or present evidence of his intellectual disability. Fourth, Mr. Martin contended that his initial postconviction counsel provided ineffective assistance by failing to investigate or present evidence of his intellectual disability. Mr. Martin also argued that the criteria in R.C. 2953.23(A) for filing a successive postconviction petition are not jurisdictional. If they are found to be so, however, then the statute is unconstitutional on its face and as applied.

{¶12} The State filed a motion to dismiss, which Mr. Martin opposed. On December 4, 2023, the trial court filed a judgment entry granting the State's motion and

3

dismissing Mr. Martin's petition. The trial court determined that Mr. Martin "failed to satisfy the jurisdictional requirements set forth in R.C. 2953.23(A)(1)(a) for a successive petition. This petition was untimely, and Petitioner has failed to demonstrate that he was 'unavoidably prevented' from discovery of the facts upon which this petition is based."

{¶13} Mr. Martin appealed and raises four assignments of error:

{¶14} "[1.] The Court Of Common Pleas Erred By Failing To Find That *Moore II* And *Moore I* Are New And Retroactive And Entitle Martin To Post-Conviction Relief.

{¶15} "[2.] The Court Of Common Pleas Erred By Failing To Find That *Jones v. Mississippi* Is New And Retroactive And Entitles David Martin To Post-Conviction Relief.

{¶16} "[3.] The Court of Common Pleas Erred By Refusing To Consider Martin's Ineffective Assistance Of Counsel Claim, Where Martin Personally Was Unavoidably Prevented From Presenting His Claim Earlier, Because He Is Intellectually Disabled, Indigent, Incarcerated, And Required Effective Counsel.

{¶17} "[4.] The Court of Common Pleas Erred By Refusing To Grant Post-Conviction Relief From The Death Sentence Where Martin Has Presented Uncontroverted Proof That He Is Intellectually Disabled And Ineligible For Execution Under The Sixth, Eighth, And Fourteenth Amendments."

**Standard of Review**

{¶18} "[A] postconviction proceeding is a collateral civil attack on the judgment." *State v. Apanovitch*, 2018-Ohio-4744, ¶ 35. The Supreme Court of Ohio has held that "[t]he 'right to file a postconviction petition is a statutory right, not a constitutional right.'" *Id.*, quoting *State v. Broom*, 2016-Ohio-1028, ¶ 28. "A postconviction petitioner therefore 'receives no more rights than those granted by the statute.'" *Id.*, quoting *State v. Calhoun*,

4

86 Ohio St.3d 279, 281 (1999). "This means that any right to postconviction relief must arise from the statutory scheme enacted by the General Assembly, and "[t]hat includes the right to have one's claim heard at all . . . ." *Id.* at ¶ 35, 36.

{¶19} R.C. 2953.21 et seq. governs petitions for postconviction relief. The statute defines who may file a petition as follows:

{¶20} "A person in any of the following categories may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief: . . . Any person who has been convicted of a criminal offense and sentenced to death and who claims that there was a denial or infringement of the person's rights under [the Ohio or United States] Constitutions that creates a reasonable probability of an altered verdict[.]" R.C. 2953.21(A)(1)(a)(ii).

{¶21} The statute contains the following time limitations for filing a petition:

{¶22} "Except as otherwise provided in section 2953.23 of the Revised Code, a petition under division (A)(1)(a) . . . (ii) . . . of this section shall be filed no later than three hundred sixty-five days after . . . , the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication or, if the direct appeal involves a sentence of death, the date on which the trial transcript is filed in the supreme court." R.C. 2953.21(A)(2)(a).

{¶23} The statute "permits a [petitioner] to file an untimely, successive petition for postconviction relief only under specific, limited circumstances," *Apanovitch*, 2018-Ohio-4744, at ¶ 22, providing in relevant part:

5

{¶24} "[A] court *may not entertain* a petition filed after the expiration of the period prescribed in division (A) of [R.C. 2953.21] or a second petition or successive petitions for similar relief on behalf of a petitioner *unless* . . . [b]oth of the following apply:

{¶25} "(a) Either the petitioner shows that [1] the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, [2] subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

{¶26} "(b) The petitioner shows by clear and convincing evidence . . . , if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence." (Emphasis added.)  R.C. 2953.23(A)(1).

{¶27} The Supreme Court of Ohio has held that "a petitioner's failure to satisfy R.C. 2953.23(A) deprives a trial court of jurisdiction to adjudicate the merits of an untimely or successive postconviction petition."  *Apanovitch*, 2018-Ohio-4744, at ¶ 36.  "'[T]he question whether a court of common pleas possesses subject-matter jurisdiction to entertain an untimely [or successive] petition for postconviction relief is a question of law, which appellate courts review de novo.'"  *Id*. at ¶ 24, quoting *State v. Kane*, 2017-Ohio-7838, ¶ 9 (10th Dist.).

6

**New and Retroactive Rights**

**{¶28}** In his first and second assignments of error, Mr. Martin contends that the trial court erred in dismissing his successive petition for postconviction relief because the Supreme Court of the United States recognized new rights that apply retroactivity to him.

**{¶29}** Mr. Martin's first and second assignments of error involve the exception in R.C. 2953.23(A)(1)(a) requiring a petitioner to show that "subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right."

**{¶30}** The Supreme Court of the United States has explained that "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague v. Lane*, 489 U.S. 288, 301 (1989). In other words, "a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Id*. The Court has held that "a new constitutional rule of criminal procedure does not apply, as a general matter, to convictions that were final when the new rule was announced." *Montgomery v. Louisiana*, 577 U.S. 190, 198 (2016). However, "courts must give retroactive effect to new substantive rules of constitutional law." *Id*. "Substantive rules include 'rules forbidding criminal punishment of certain primary conduct,' as well as 'rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" *Id*., quoting *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989). "Procedural rules, in contrast, are designed to enhance the accuracy of a conviction or sentence by regulating 'the manner

7

of determining the defendant's culpability.'" (Emphasis deleted.) *Id.* at 201, quoting *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004).

### The Moore Cases

{¶31} In his first assignment of error, Mr. Martin contends that the Supreme Court recognized a new and retroactive right in *Moore v. Texas*, 581 U.S. 1 (2017) ("*Moore I*"), and *Moore v. Texas*, 586 U.S. 133 (2019) ("*Moore II*").

{¶32} To provide proper context for Mr. Martin's argument, we briefly summarize the relevant case law. In *Atkins v. Virginia*, 536 U.S. 304 (2002), the Supreme Court of the United States held that executing a person with an intellectual disability is cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. *See id.* at 321. The Court determined that although persons with an intellectual disability are not exempt from criminal sanctions, "because of their disabilities in areas of reasoning, judgment, and control of their impulses, . . . they do not act with the level of moral culpability that characterizes the most serious adult conduct." *Id.* at 306. The Court did not dictate a specific standard for determining whether an offender was intellectually disabled but stated that it would "'leave to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences.'" *Id.* at 317, quoting *Ford v. Wainwright*, 477 U.S. 399, 405, 416-417 (1986).

{¶33} In *State v. Lott*, 2002-Ohio-6625, the Supreme Court of Ohio held that "[t]he procedures for postconviction relief outlined in R.C. 2953.21 et seq. provide a suitable statutory framework for reviewing [a petitioner's] *Atkins* claim." *Id.* at ¶ 13. The Court set forth the following three-part test to determine whether a defendant is intellectually disabled and ineligible for execution: "(1) significantly subaverage intellectual functioning,

8

Case No. 2024-T-0001

(2) significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction, and (3) onset before the age of 18." *Id.* at ¶ 12, *overruled by State v. Ford*, 2019-Ohio-4539. The Court held that "there is a rebuttable presumption that a defendant is not [intellectually disabled] if his or her IQ is above 70." *Id.*

{¶34} In *Hall v. Florida*, 572 U.S. 701 (2014), the Supreme Court of the United States held that a Florida law that defined intellectual disability as having an IQ of 70 or below was unconstitutional because it created an "unacceptable risk" that persons with intellectual disabilities would be executed. *Id.* at 704. Specifically, the Court found that Florida's rule disregarded "established medical practice" by taking "an IQ score as final and conclusive evidence of a defendant's intellectual capacity, when experts in the field would consider other evidence" and by relying on "a purportedly scientific measurement of the defendant's abilities, his IQ score, while refusing to recognize that the score is, on its own terms, imprecise." *Id.* at 712. Rather, "[t]he professionals who design, administer, and interpret IQ tests have agreed, for years now, that IQ test scores should be read not as a single fixed number but as a range." *Id.* The Court cautioned that the States do not have "unfettered discretion" to define intellectual disability. *Id.* at 719. Rather, "[t]he legal determination of intellectual disability . . . is informed by the medical community's diagnostic framework." *Id.* at 721.

{¶35} In *Moore I*, 581 U.S. 1 (2017), the Supreme Court of the United States vacated a Texas Court of Criminal Appeals' ("CCA") judgment finding that a defendant was not intellectually disabled. *Id.* at 5. The Court found that (1) "the CCA's conclusion that Moore's IQ scores established that he is not intellectually disabled is irreconcilable with *Hall*," which "instructs that, where an IQ score is close to, but above, 70 courts must

9

account for the test's 'standard error of measurement,'" *Moore I* at 13, quoting *Hall* at 713, 723; (2) "[t]he CCA's consideration of Moore's adaptive functioning . . . deviated from prevailing clinical standards," *Moore I* at 15; and (3) the CCA "failed adequately itself of the 'medical community's diagnostic framework'" by employing an outdated standard for determining intellectual disability. *Moore I* at 20-21, quoting *Hall* at 721. The Court remanded the case to the CCA for further proceedings consistent with its opinion. *Id.* at 21.

**{¶36}** In a subsequent appeal in *Moore II*, 586 U.S. 133 (2019), the Court determined that the CCA's decision on remand was inconsistent with its directive in *Moore I. Moore II* at 139. Specifically, the Court stated that the CCA's decision, "when taken as a whole and when read in the light both of our prior opinion and the trial court record, rests upon analysis too much of which too closely resembles what we previously found improper." *Id.* at 142. Instead of remanding the case, the Court concluded that "on the basis of the trial court record, Moore has shown he is a person with intellectual disability." *Id.*

**{¶37}** In *Ford*, 2019-Ohio-4539, the Supreme Court of Ohio revisited the three-part test for determining whether a defendant is intellectually disabled and ineligible for execution. The Court determined that its prior holding in *Lott* that there exists a rebuttable presumption that a defendant with an IQ score above 70 is not intellectually disabled is no longer valid. *Id.* at ¶ 100. The Court held that "a court determining whether a defendant is intellectually disabled must consider three core elements: (1) intellectual-functioning deficits (indicated by an IQ score approximately two standard deviations below the mean—i.e., a score of roughly 70 or lower when adjusted for the standard error

Case No. 2024-T-0001

of measurement), (2) significant adaptive deficits in any of the three adaptive-skill sets (conceptual, social, and practical), and (3) the onset of these deficits while the defendant was a minor." *Id.*

**{¶38}** Mr. Martin asserts that the Supreme Court of the United States' decisions in *Moore I* and *Moore II* are "the very definition of a substantive, retroactive rule of law" because they "outline and define the class of persons who are intellectually disabled and exempt from execution." We disagree with Mr. Martin's characterization. In *Moore I*, the Supreme Court determined that the CCA failed to comply with the Court's precedent in *Hall*, 572 U.S. 701 (2014). *See Moore I* at 5, 13-15, 18-21. In *Moore II*, the Court determined that the CCA failed to comply with the Court's directive in *Moore I*. *Moore II* at 139. As stated, a case result that is dictated by existing precedent does not constitute a new rule. *See Teague*, 489 U.S. at 301.

**{¶39}** Mr. Martin next asserts that the Supreme Court "applied *Moore II* and *Moore I* retroactively to ultimately grant Moore post-conviction relief from a 2004 death sentence that pre-dated *Moore II* and *Moore I* by many years." This is not an accurate statement. In the *Moore* cases, the Court analyzed the application of *Hall* to Moore's intellectual-disability claim, which he had raised in a state postconviction proceeding. *See In re Payne*, 722 Fed.Appx. 534, 538 (6th Cir. 2018) (rejecting the argument that "the *Hall* and *Moore* decisions themselves [are] examples of retroactive applications" because "both of those decisions merely analyzed the application of *Atkins* claims that were appropriately raised in state post-conviction proceedings").

**{¶40}** Notably, Mr. Martin does not argue, as have many petitioners, that the Supreme Court announced a new and retroactive right in *Hall*. *See, e.g., State v.*

11

*Jackson*, 2020-Ohio-4015, ¶ 39 (3d Dist.). This is most likely because *Hall* was decided before his trial. Mr. Martin also does not argue that the Supreme Court of Ohio announced a new and retroactive right in *Ford*, 2019-Ohio-4539. R.C. 2953.23(A) does not provide an exception for an untimely or successive petition based on a new decision from the Supreme Court of Ohio. *State v. Parker*, 2019-Ohio-3848, ¶ 2. Therefore, courts have held that *Ford* does not provide an exception to the jurisdictional requirements of R.C. 2953.21. *See Jackson* at ¶ 40.

**{¶41}** Accordingly, the Supreme Court of the United States did not announce a new and retroactive right in the *Moore* cases. Mr. Martin's first assignment of error is without merit.

### *Jones v. Mississippi*

**{¶42}** In his second assignment of error, Mr. Martin contends that the Supreme Court of the United States recognized a new and retroactive right in *Jones v. Mississippi*, 593 U.S. 98 (2021). In that case, the appellant argued that a sentencer imposing a life-without-parole sentence on a person who committed a homicide when he or she was under 18 must also make a separate factual finding that the person is permanently incorrigible, or at least provide an on-the-record sentencing explanation that includes that implicit finding. *Id.* at 101. In summarizing the appellant's argument, the Court noted that that appellant "analogizes to cases where the Court has recognized certain eligibility criteria, such as sanity or *a lack of intellectual disability*, that must be met before an offender can be sentenced to death." (Emphasis added.) *Id.* at 107. The Court ultimately rejected the appellant's position. *Id.* at 101.

12

{¶43} Mr. Martin argues that "*Jones* held for the first time that a defendant's 'lack of intellectual disability' is an 'eligibility criterion' for a death sentence." Therefore, Mr. Martin argues, he is not eligible for the death penalty because a jury has not established his "lack of intellectual disability" beyond a reasonable doubt. Mr. Martin cites no legal authority that construes or applies *Jones* in this manner. In addition, his argument does not reflect a reasonable reading of *Jones*. As stated, *Jones* did not involve an intellectual-disability claim. In addition, the Court was merely summarizing the appellant's position. We decline to construe the Court's statement in *Jones* as the announcement of a new right regarding a different type of claim.

{¶44} Accordingly, the Supreme Court of the United States did not announce a new and retroactive right in *Jones*. Mr. Martin's second assignment of error is without merit.

**Unavoidably Prevented**

{¶45} In his third assignment of error, Mr. Martin contends that the trial court erred in dismissing his successive petition for postconviction relief because he was personally unavoidably prevented from presenting his ineffective assistance of counsel claim earlier because he is "intellectually disabled, indigent, incarcerated, and required effective counsel."

{¶46} This assignment of error involves the alternative exception in R.C. 2953.23(A)(1)(a) requiring a petitioner show that he or she "was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief . . . ."

Case No. 2024-T-0001

{¶47} Mr. Martin's assignment of error misapprehends the statutory language. The issue is not whether Mr. Martin was unavoidably prevented from presenting his claims. Rather, as stated, R.C. 2953.23(A)(1)(a) "requires [the petitioner] to show that he was unable to discover the '*facts* upon which [he] must rely to present the claim.'" (Emphasis in original.) *State v. Amato*, 2009-Ohio-2950, ¶ 19 (11th Dist.), quoting R.C. 2953.23(A)(1)(a). A petitioner was "unavoidably prevented" from the discovery of facts if he had "no knowledge of the existence of those facts and could not have learned of their existence within the time specified for filing his petition in the exercise of reasonable diligence." *State v. Holnapy*, 2013-Ohio-4307, ¶ 32 (11th Dist.). "The 'facts' contemplated by R.C. 2953.23(A)(1)(a) are the historical facts of the case, which occurred up to and including the time of conviction." *State v. Turner*, 2007-Ohio-1468, ¶ 11 (10th Dist.). "[T]he exception provided in R.C. 2953.23(A)(1)(a) involves newly discovered evidence." *State v. Black*, 2022-Ohio-3119, ¶ 11 (10th Dist.).

{¶48} In addition, while Mr. Martin's assignment of error asserts that he was unavoidably prevented from presenting his "ineffective assistance of counsel claim," he actually argues in his brief that he was unavoidably prevented from presenting his intellectual-disability claim due to ineffective assistance of trial and postconviction counsel.

### Trial Counsel

{¶49} Mr. Martin first argues that his trial counsel was ineffective for failing "to investigate, develop, or present evidence of his intellectual disability."

{¶50} Mr. Martin assumes that ineffective assistance of trial counsel equates to being unavoidably prevented from discovering the facts underlying his intellectual-

14

Case No. 2024-T-0001

disability. However, the opposite is true. To establish ineffective assistance of trial counsel, Mr. Martin must show that "counsel's performance was deficient," which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Specifically, Mr. Martin "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* Thus, for Mr. Martin's trial counsel to have been ineffective, then *effective* trial counsel would have been able to discover evidence of Mr. Martin's intellectual disability with reasonable inquiry. However, if the evidence was reasonably discoverable, then, by definition, the "unavoidably prevented" standard is not met. "The defendant cannot claim evidence was undiscoverable simply because no one made efforts to obtain the evidence sooner." *State v. Bethel*, 2020-Ohio-1343, ¶ 20 (10th Dist.).

{¶51} Conversely, if evidence of Mr. Martin's intellectual disability was not reasonably discoverable, then even effective trial counsel could not have discovered it. In that case, Mr. Martin's trial counsel could not have been ineffective for failing to investigate, develop, or present such evidence. *See State v. Waddy*, 2016-Ohio-4911, ¶ 37, fn. 5 (10th Dist.) (recognizing this "'Catch-22 situation' in the analogous context of a motion for new trial under Crim.R. 33(B)").

{¶52} The Third District recognized this logical fallacy in *Jackson*, 2020-Ohio-4015 (3d Dist.). In that case, the petitioner filed a second petition for postconviction relief seeking to overturn his death sentence. *Id.* at ¶ 10. He argued, among other things, that he was unavoidably prevented from discovering his intellectual disability due to ineffective assistance of trial counsel. *Id.* at ¶ 26. The appellate court rejected this argument, stating,

15

Case No. 2024-T-0001

"'[t]he fact that appellant raises claims of ineffective assistance of counsel suggests that the bases for his claims could have been uncovered if "reasonable diligence" had been exercised.'" *Id.* at ¶ 28, quoting *State v. Cunningham*, 2016-Ohio-3106, ¶ 22 (3d Dist.), quoting *State v. Creech*, 2013-Ohio-3791, ¶ 18 (4th Dist.); *see also State v. Peters*, 2009-Ohio-6024, ¶ 11 (9th Dist.) (petitioner did not show "she was unavoidably prevented from discovering her medical condition but for the ineffective assistance of counsel").

{¶53} The Tenth District recognized the same in *State v. Vinson*, 2021-Ohio-836, ¶ 19 (10th Dist.), stating, "When a petitioner blames the failure to discover the necessary facts on his trial counsel's ineffectiveness, the petitioner essentially concedes that such evidence could have been obtained either by the petitioner or counsel in the exercise of reasonable diligence." *Id.* at ¶ 19.

{¶54} This court rejected a similar argument in *State v. Theisler*, 2009-Ohio-6862 (11th Dist.), the petitioner was convicted of multiple felonies related to prescribing controlled substances without a medical license. *See id.* at ¶ 2. The petitioner filed an untimely petition for postconviction relief, attaching affidavits from a licensed physician assistant, himself, and his employer's office administrator. *Id.* at ¶ 5. The trial court denied his petition, and this court affirmed. *Id.* at ¶ 5, 33. We explained that "[t]he crux of [petitioner's] arguments to the trial court was that he was denied the effective assistance of counsel due to trial counsel's failure to call expert witnesses." *Id.* at ¶ 17. We found that "[n]one of these affidavits state that [petitioner] was unavoidably prevented from discovering the proffered evidence contained in [the] affidavits" and that petitioner had "not shown that this evidence was unavailable at an earlier date." *Id.* Thus, he had "not demonstrated the existence of qualifying facts that he was 'unavoidably prevented'

16

from discovering" and "failed to meet the initial prong of R.C. 2953.23(A)." *Id. See also State v. Gaines*, 2019-Ohio-2097, ¶ 16 (11th Dist.) (petitioner did not satisfy the "unavoidably-prevented" prong simply because he was not aware of the full amount of evidence his counsel received in discovery from the state).

{¶55} Crucially, Mr. Martin acknowledges that the 2014 trial record contained evidence indicative of his alleged intellectual disability. For instance, the trial record contains an IQ test from 2001 (when Mr. Martin was 16) where he scored 71. Mr. Martin's school grades and standardized test results through the eleventh grade (before his confinement in juvenile detention) were consistently failing and/or below grade level. Mr. Martin was also evaluated for competency prior to trial. The evaluation report stated that "Mr. Martin is estimated to have borderline to low average verbal intelligence based on his language and vocabulary use and based upon his general fund of information. Mr. Martin stated he was in learning disability classes in elementary school and in junior high school." As one court has aptly explained, "[b]y definition, something that is *discernible in the record* would not be something a defendant has been unavoidably prevented from discovering." (Emphasis added.) *State v. Beechler*, 2017-Ohio-1385, ¶ 28 (2d Dist.).

{¶56} Mr. Martin relies on *State v. Howard*, 2016-Ohio-504 (10th Dist.), for the proposition that "Ohio appellate courts have recognized that, in some circumstances, a petitioner may rely on his prior counsel's ineffectiveness to explain why he was unavoidably prevented from raising a claim previously." In *Howard*, the petitioner filed an untimely petition for postconviction relief claiming that his wife's medical records would have bolstered his claim that she died by suicide rather than murder. *See id*. at ¶ 10-11. He contended that his trial counsel was ineffective for failing to obtain the medical records

within the time required to file a timely petition for postconviction relief. *See id.* at ¶ 33. In support of his petition, the petitioner produced medical records documenting the victim's serious mental health condition and her two prior suicide attempts; the affidavits of his trial counsel who admitted that they never sought the records; the affidavit of the criminal investigator for the public defender's office assigned to his case who admitted that he never visited the medical provider seeking the victim's records; and the affidavit of a social worker at the public defender's office who admitted petitioner encouraged her to obtain the medical records, it was her normal practice to make recommendations to attorneys on evidence they should obtain, and the decision whether to pursue certain evidence was left to counsel. *Id.* at ¶ 24. The Tenth District determined that "[u]nder these unique facts," the petitioner "was unavoidably prevented from discovering the facts necessary for his claim of ineffective assistance of [trial] counsel within the . . . deadline for postconviction relief." *Id.* at ¶ 35. The court rejected the State's argument that the petitioner had a duty to discover potentially favorable evidence on his own, reasoning as follows:

{¶57} "We have concerns . . . with placing the onus of responsibility to thoroughly investigate a case on the defendant when the defendant is represented by and relying on counsel. In [prior precedent], this court noted it would not find unavoidable prevention where the defendants could not explain why neither they nor their trial counsel could not have discovered the evidence with the exercise of reasonable diligence. . . . Here, however, [petitioner] has adequately explained both failures. [Petitioner] did not discover the [mental health] records on his own because he alleges neither he nor his daughters knew that [his wife] actually obtained treatment at [the mental health facility]. He informed

18

his trial counsel and the social worker that he thought she had tried to obtain treatment there, and he relied on his counsel to thoroughly investigate the case. As we outlined above, [petitioner's] trial counsel was ineffective in failing to adequately investigate the matter, and we will not penalize [petitioner] for relying on his trial counsel to conduct an investigation when he gave them all the information he had." *Id.* at ¶ 34.

{¶58} We find *Howard* to be distinguishable. As explained above, Mr. Martin has not cogently explained why his trial counsel could not have discovered the evidence underlying his intellectual-disability with the exercise of reasonable diligence. In fact, he concedes that such evidence was discernable in the 2014 trial record.

{¶59} In addition, *Howard* involved newly discovered evidence that the petitioner asserted in a first, but untimely, postconviction petition. Mr. Martin, by contrast, is attempting to raise a new legal defense to his death sentence in a successive postconviction petition. R.C. 2353.23(A) "speaks of being unavoidably prevented from discovering facts, not the law." *State v. Clay*, 2018-Ohio-985, ¶ 12 (7th Dist.). *See State v. Kane*, 2017-Ohio-7838, ¶ 17 (10th Dist.) ("[I]gnorance of the law does not excuse appellant's untimely filing of her petition for postconviction relief"). Courts have held that R.C. 2353.23(A) "does not afford a defendant a second chance to advance a legal argument that could have been raised upon the original trial record." *State v. Wharton*, 2015-Ohio-4566, ¶ 11 (9th Dist.); *see State v. Burton*, 2017-Ohio-7588, ¶ 11 (9th Dist.); *State v. Brown*, 2000 WL 20557, *2 (6th Dist. Jan. 14, 2000). Thus, "[a] newly discovered legal argument is not a 'newly discovered fact' as contemplated by R.C. 2953.23 to support a successive petition for postconviction relief." *Brown* at *2. Accordingly, a

19

Case No. 2024-T-0001

petitioner may not attempt to raise, in an untimely manner, a legal argument that previously existed for him or her. *Burton* at ¶ 12.

**{¶60}** Mr. Martin was tried and sentenced in September 2014, which was several years after *Atkins* and nearly five months after *Hall*. Thus, an intellectual-disability claim was available to Mr. Martin both at trial and at the time he filed his first postconviction petition in 2016. *See Jackson*, 2020-Ohio-4015, at ¶ 24 (3d Dist.) ("we cannot say that [petitioner] was unavoidably prevented from discovering his intellectual disability as his initial postconviction petition could have raised an *Atkins* claim").

### *Postconviction Counsel*

**{¶61}** Mr. Martin next argues that his initial postconviction counsel was ineffective for failing to raise his intellectual disability and for failing to argue that his trial counsel was deficient for not raising it.

**{¶62}** The reason Mr. Martin argues that *both* trial and initial postconviction counsel were ineffective is obvious—even if trial counsel was ineffective for failing to investigate and raise an intellectual-disability claim, it would not explain why his initial postconviction counsel failed to do so. For example, in *Jackson*, 2020-Ohio-4015 (3d Dist.), the court noted that the petitioner had an opportunity to raise his intellectual disability claim in his initial postconviction petition but failed to do so. *Id.* at ¶ 27. Yet, the petitioner did not allege that his initial postconviction counsel was ineffective. *Id.*

**{¶63}** While Mr. Martin *does* argue that his initial postconviction counsel was ineffective, he is legally precluded from doing so. "[T]he Sixth Amendment right to the effective assistance of counsel does not extend to state postconviction relief proceedings." *State v. McKelton*, 2016-Ohio-3216, ¶ 31 (12th Dist.). Further, R.C.

20

Case No. 2024-T-0001

2953.21(J)(2) provides that "[t]he ineffectiveness or incompetence of counsel during proceedings under this section does not constitute grounds for relief in a proceeding under this section, in an appeal of any action under this section, or in an application to reopen a direct appeal." Thus, "the General Assembly specifically prohibited collateral attacks upon [postconviction] counsel's effectiveness." *State v. Brown*, 2003-Ohio-3551, ¶ 13 (7th Dist.).

**{¶64}** Accordingly, Mr. Martin did not show that he was unavoidably prevented from discovering the facts upon which he must rely to present his intellectual-disability claim.

### *Res Judicata*

**{¶65}** Finally, Mr. Martin argues that the trial court should not have found that the doctrine of res judicata barred his claim for ineffective assistance of trial counsel. According to Mr. Martin, res judicata does not apply where a petitioner relies on evidence dehors the record, and a trial court is not required to apply res judicata.

**{¶66}** A review of the appealed judgment indicates that the court discussed res judicata in the context of its "unavoidably-prevented" analysis. Since we have found no error in the trial court's determination, any error in the court's application of res judicata would be harmless or moot.

**{¶67}** Mr. Martin's third assignment of error is without merit.

### Constitutional Question

**{¶68}** In his fourth assignment of error, Mr. Martin contends that the trial court erred in dismissing his successive petition for postconviction relief because he presented "uncontroverted proof that he is intellectually disabled and ineligible for execution."

Case No. 2024-T-0001

**{¶69}** Specifically, Mr. Martin argues that to the extent we conclude that the trial court did not err in dismissing his successive postconviction petition pursuant to R.C. 2953.23, then we must find R.C. 2953.23 unconstitutional "as applied under the circumstances" and "vacate his death sentence."

**{¶70}** Mr. Martin cites no authority in which a court has found merit to this argument. Further, Mr. Martin's argument is legally flawed. First, no court has determined that Mr. Martin qualifies as a person with an intellectual disability under the current legal definition. This appeal involves whether Mr. Martin has a statutory right to have his postconviction claims heard at all. *See Apanovitch*, 2018-Ohio-4744, at ¶ 36. Second, to the extent Mr. Martin is arguing there can be no valid procedural impediments to the assertion of his intellectual-disability claim, it lacks merit. The Supreme Court of the United States has stated that "the State remains free to impose proper procedural bars to restrict repeated returns to state court for postconviction proceedings." *Slack v. McDaniel*, 529 U.S. 473, 489 (2000). After *Atkins*, the Supreme Court of Ohio held that "[t]he procedures for postconviction relief outlined in R.C. 2953.21 et seq. provide a suitable statutory framework for reviewing [a petitioner's] *Atkins* claim." *Lott*, 2002-Ohio-6625, at ¶ 13. Third, this court has found that the requirements in R.C. 2953.23(A)(2) are constitutional on their face and as applied to a petitioner who had been sentenced to death. *See State v. Davie*, 2001 WL 1647193, *5 (11th Dist. Dec. 21, 2001), *appeal not accepted*, 2002-Ohio-1737.

**{¶71}** Accordingly, Mr. Martin has not established that R.C. 2953.23 is unconstitutional as applied to him. Mr. Martin's fourth assignment of error is without merit.

22

Case No. 2024-T-0001

**{¶72}** In sum, we conclude that the trial court did not err by dismissing Mr. Martin's successive petition for postconviction relief. We emphasize that our decision is based solely on the Ohio Revised Code's mandatory requirements for a successive postconviction petition. We take no position on the substantive merits of Mr. Martin's intellectual-disability claim.

**{¶73}** For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is affirmed.

EUGENE A. LUCCI, J., concurs,

MATT LYNCH, J., dissents with a Dissenting Opinion.

_____

MATT LYNCH, J., dissents with a Dissenting Opinion.

**{¶74}** I respectfully dissent and would reverse the decision of the lower court on the grounds that Martin satisfied the exception for untimely and/or successive postconviction petitions where "the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief." R.C. 2953.23(A)(1)(a). Stated simply, Martin was unavoidably prevented, due to the ineffectiveness of trial counsel, from discovery of facts upon which it was necessary for him to rely in order to present his *Atkins* claim. *State v. Deloney*, 2017-Ohio-9282, ¶ 14 (1st Dist.) ("[t]he determination of whether a capital defendant is … mentally retarded presents a factual issue for the trial court"). The facts in question are the evaluations and subsequent expert reports opining that Martin satisfies the criteria for intellectual disability

23

so that his execution would violate the Eighth Amendment's prohibition against the execution of such persons. Inasmuch as these opinions and the evaluations underlying them did not exist at the time of his direct appeal (as well as the time of his initial postconviction petition), he was unavoidably prevented from discovering them.

{¶75} The majority's analysis reductively concludes that petitioners in Martin's position could never satisfy R.C. 2953.23(A)(1)(a): "[I]f the evidence [of Martin's intellectual disability] was reasonably discoverable, then, by definition, the 'unavoidably prevented' standard is not met." *Supra* at ¶ 50. "Conversely, if evidence of Mr. Martin's intellectual disability were not reasonably discoverable, … trial counsel could not have been ineffective for failing to investigate, develop, or present such evidence." *Id.* at ¶ 51; *State v. Vinson*, 2021-Ohio-836, ¶ 19 (10th Dist.) ("[w]hen a petitioner blames the failure to discover the necessary facts on his trial counsel's ineffectiveness, the petitioner essentially concedes that such evidence could have been obtained either by the petitioner or counsel in the exercise of reasonable diligence"). The majority's reasoning does not fairly apply to the present circumstances, i.e., in the context of failure to raise an *Atkins* claim.

{¶76} As noted by the majority, there were indications in the trial court record at the time of Martin's conviction and sentencing in 2014 suggesting the possibility that he was intellectually disabled such that reasonably diligent trial counsel should have pursued an *Atkins* defense to the death penalty: An IQ test from 2001 (Martin was age 16) produced a score of 71. Martin's school grades and standardized test results through the eleventh grade (before his confinement in juvenile detention) were consistently failing and/or below grade level. Also, Martin was evaluated for competency prior to trial. The

24

evaluation report stated: "Mr. Martin is estimated to have borderline to low average verbal intelligence based on his language and vocabulary use and based upon his general fund of information. There is no report of a history of developmental disability, however, Mr. Martin stated he was in learning disability classes in elementary school and in junior high school. He describes himself as, 'I'm not slow, I just need more time to process.'"

{¶77} These indications are sufficient to support the claim that reasonably effective counsel would have further investigated Martin's possible intellectual disability. Without more, however, they are inadequate to support an *Atkins* claim or even a claim of ineffective assistance on direct appeal for failing to raise an *Atkins* claim. In light of the difficulties inherent in such situations, the Supreme Court of Ohio recognized that "[p]ostconviction-relief petitions raising claims of ineffective assistance of counsel pose unique challenges" inasmuch as "criminal defendants rely on their trial counsel to develop the trial record." *State v. Blanton*, 2022-Ohio-3985, ¶ 29. In *State v. Cole*, 2 Ohio St.3d 112 (1982), the court "acknowledged that special considerations apply with respect to postconviction ineffective-assistance-of-counsel claims that "'depend[] upon factual allegations that cannot be determined by examination of the files and records of the case.'"" (Citations omitted.) *Blanton* at ¶ 30. "Thus, [the court] set forth the following rule: 'Where [a] defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence dehors the record, res judicata is a proper basis for dismissing [the] defendant's petition for postconviction relief.'" *Id.*, citing *Cole* at syllabus. Stated otherwise, "res judicata does not bar a postconviction ineffective-assistance-of-counsel claim when … [the petitioner] must rely on evidence outside the

25

trial record to establish his claim for relief." *Id.* at ¶ 2; *State v. Bunch*, 2022-Ohio-4723, ¶ 27 ("the petition must be sufficient on its face to raise an issue whether [petitioner] was deprived of the effective assistance of counsel, and [petitioner's] claim depends on factual allegations that cannot be determined by examining the record from his trial").

{¶78} As stated above, the indications of intellectual disability justified further investigation but did not by themselves establish a claim. Under *State v. Lott*, 2002-Ohio-6625 (not overruled until 2019), an IQ score of above 70 only created a rebuttable presumption that an offender was not mentally retarded: "While IQ tests are one of the many factors that need to be considered, they alone are not sufficient to make a final determination on this issue." *Id.* at ¶ 12. Just three months prior to Martin's sentencing, the United States Supreme Court in *Hall v. Florida*, 572 U.S. 701 (2014), reversed a death penalty sentence for an offender with an IQ of 71 because the offender was not allowed to present additional evidence of intellectual disability. *Id.* at 724. The limited evidence from Martin's trial would not be sufficient to establish the prejudice element of an ineffective assistance of counsel claim inasmuch as it is arguable, if not doubtful, that an IQ score of 71 and poor academic performance demonstrate a reasonable probability of ultimately being able to prove intellectual disability. *Compare State v. Maxwell*, 2014-Ohio-1019, ¶ 176 (rejecting the claim that trial counsel were ineffective by failing to request an *Atkins* hearing where the offender's IQ scores ranged between 68 and 84, there was no evidence of significant limitations in two or more adaptive skills, and no indication that he had been identified as intellectually disabled prior to age 18).

{¶79} In his Petition to Vacate Death Sentence, Martin introduced evidence from outside the trial court record to establish his claim for relief. The Petition was supported

26

by the reports of Dr. Robin Belcher-Timme (psychologist) and Dr. Carol Armstrong (neuropsychologist) who interviewed and assessed Martin in 2020 and 2021. Both concluded that Martin meets the current diagnostic criteria for intellectual disability. In addition, there was evidence of an IQ test administered in 1995 in which Martin (age 11) scored 68 and an assortment of affidavits from family members, school and medical records. The significant evidence for the purposes of overcoming the unavoidably prevented requirement and/or res judicata are the reports of the psychological evaluations as they were not part of the record on appeal and demonstrate that further investigation into Martin's mental capacity was warranted at the time of sentencing. Moreover, the reports were based, inter alia, on assessments of Martin conducted after the appeal of right and prior postconviction proceedings had terminated. *Compare State v. Frazier*, 2008-Ohio-5027, ¶ 53 (6th Dist.) (petitioner fails to present additional evidence outside the record where the "affidavit [attached to the postconviction petition] does not contain any evidence that was not available at the time of trial").

{¶80} The situation involving an *Atkins* claim is unique in that, while there may be evidence in the record suggesting the possibility of intellectual disability, further evidence will almost always be necessary to establish actual disability. Thus, it may not be possible to determine whether a viable *Atkins* claim exists by examination of the files and records of the case. "The determination as to whether an individual is mentally retarded, and suffers from limitations caused by that condition, is not something within the common knowledge of lay people." *Deloney*, 2017-Ohio-9282, at ¶ 17 (1st Dist.). Accordingly, a "line of jurisprudence in Ohio … has held that, in spite of significant evidence of mental retardation developed in a death-penalty trial during the penalty phase, a defendant is still

27

Case No. 2024-T-0001

entitled to the appointment of an expert in a postconviction proceeding premised on *Atkins* and *Lott*." *Id.* at ¶ 19 (cases cited). Without the additional evidence from outside the record attached to Martin's current Petition, he was unable to properly raise his claim for ineffective assistance of counsel. *See State v. Bays*, 2005-Ohio-47, ¶ 23 (2d Dist.) ("[a]lthough the expert testimony presented at Bays's mitigation hearing regarding his intellectual limitations is relevant to Bays's *Atkins* claim, it was not developed either to prove or disprove the issue presented by his *Atkins* claim–whether Bays is so impaired that his execution would constitute cruel and unusual punishment").

{¶81} The "without more" or "evidence dehors the record" distinguishes the present case from those relied upon by the majority. In *State v. Jackson*, 2020-Ohio-4015 (3d Dist.), the court of appeals in circumstances similar to the present ones concluded that the petitioner had failed to demonstrate that he was unavoidably prevented from discovering the factual basis of his *Atkins* claim raised in a successive petition for postconviction relief. It is impossible to determine from the *Jackson* opinion what sort of evidence was used to support the successive petition and whether it was newly discovered evidence or evidence not in existence at the time of the earlier petition. In any event, the court of appeals' focus was not on the "unique challenges" inherent in the situation where a criminal defendant must rely on trial counsel to develop the record to support an *Atkins* claim, but on the petitioner's personal failure to diligently pursue such a claim: "because Jackson failed to raise an *Atkins* claim during his initial postconviction proceedings, failed to request funds for the purpose of developing an *Atkins* claim, and failed to pursue alternative funding, we cannot find that Jackson exercised reasonable diligence to learn of his intellectual disability within the time specified for his petition for

28

postconviction relief." *Id.* at ¶ 29. In so doing, the court of appeals ignores the rationale for allowing untimely petitions which rely on evidence dehors the record: "when a defendant must rely on his attorney to develop the record or use evidence, and the attorney fails to do so, there is no other way for the defendant to establish the attorney's deficient performance except by presenting evidence outside the trial record." *Blanton*, 2022-Ohio-3985, at ¶ 92; *compare State v. Howard*, 2016-Ohio-504, ¶ 34 (10th Dist.) ("[w]e have concerns … with placing the onus of responsibility to thoroughly investigate a case on the defendant when the defendant is represented by and relying on counsel").

{¶82} In *State v. Theisler*, 2009-Ohio-6862 (11th Dist.), this Court affirmed the denial of an untimely postconviction petition despite it being supported by affidavit testimony on the grounds that "[n]one of these affidavits state that [petitioner] was unavoidably prevented from discovering the proffered evidence contained in [the] affidavits" and it was "not shown that this evidence was unavailable at an earlier date." *Id.* at ¶ 17. In the present case, the indications of intellectual disability in 2014 were equivocal as to whether a valid *Atkins* claim could be raised. Rather, further investigation and some sort of diagnostic evaluation were necessary and this did not occur until 2020-2021. Unlike *Theisler*, the evidence in the present case was unavailable at an earlier date, i.e., the Belcher-Timme and Armstrong affidavits are based on evaluations taking place in 2020-2021.

{¶83} For the foregoing reasons, I respectfully dissent and would reverse the judgment of the court below on the grounds that Martin has demonstrated that he was unavoidably prevented from discovery of the facts upon which he relies to present his *Atkins* claim.

Case No. 2024-T-0001